UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARCIA H. STODDARD,            )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civil No. 07-1643 (GK)
                              )
MICHAEL CHERTOFF,             )
SECRETARY,                    )
U.S. Dept. of Homeland Security,)
                              )
        Defendant.            )
_____)

DEFENDANT'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTIONS FOR A
 TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

PRELIMINARY STATEMENT

    Plaintiff has moved for a temporary restraining order and a
preliminary injunction claiming that the U.S. Immigration and
Customs Enforcement ("ICE") of the U.S. Department of Homeland
Security ("DHS") breached a settlement agreement resolving
plaintiff's prior claim of discrimination based on race, brought
pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.
See Cleveland v. Chertoff, Civil No. 05-1709 (D.D.C.) (GK).[1]
Plaintiff is wrong; there has been no breach of the Settlement
Agreement.

    Rather, the filing of these motions is merely an attempt to
enjoin the ICE from conducting its routine management and
administrative functions, as well as to force the ICE to void
action taken based on the ICE's assessment of plaintiff's work

_____

[1] Plaintiff's name was previously "Marcia Hughes Cleveland."

performance since the entry of the Settlement Agreement.  While plaintiff claims that without injunctive relief she will suffer irreparable harm, she has failed to demonstrate any irreparable harm she is currently facing which would give rise to the extraordinary equitable relief sought.  This is especially true given that preliminary injunctive relief in federal personnel cases is heavily disfavored, and courts will grant such relief only under the most exceptional circumstances.  There has been no such showing in the instant case.

Similarly, plaintiff has made no showing that she is likely to succeed on the merits of her claims.  In fact, each action complained of by plaintiff was based on sound reasoning and well within the ICE's authority.  In her filing, plaintiff has done no more than show that she disagrees with the actions taken by the ICE.  An employee's mere disagreement with an action taken by an employer, however, is certainly no basis for the issuance of a preliminary injunction.

Yet the issuance of an injunction clearly would cause harm to defendant and the public interest.  This motion is merely an attempt to enjoin defendant conducting routine management and administrative functions and attempt an end-run around statutory schemes established to address personnel actions of the type plaintiff raises here.  This should not be allowed.

Consequently, for the reasons set forth below, and in the

ICE's declarations and exhibits, plaintiff's motion for a temporary restraining order and a preliminary injunction should be denied.

FACTUAL BACKGROUND

Plaintiff Marcia H. Stoddard is an Information Technology Specialist, GS-2210-13, employed by the Office of the Chief Information Officer at ICE, a part of DHS, here in Washington, D.C. Plaintiff began employment with the former U.S. Immigration and Naturalization Service ("INS") in November 1998, as a Computer Specialist/Systems Analyst, which was later reclassified as an Information Technology Specialist. In March 2003, the DHS was created and INS was abolished. Plaintiff was assigned to the Office of the Chief Information Officer within ICE.

On December 8, 2004, plaintiff filed an EEO complaint with the agency, alleging that the agency discriminated against her and created a hostile work environment on the basis of race (Black), sex (female), disability and reprisal for prior EEO activity. The agency accepted numerous issues for investigation. See Exh. 1, attached (letter from D. Diane Weaver to Marcia H. Cleveland dated April 28, 2005).

On August 26, 2005, plaintiff filed suit against DHS. Cleveland v. Chertoff, Civil No. 05-1709 (D.D.C.) (GK). At the time she filed her complaint, her first line supervisor was Raj Vellore. On January 9, 2006, plaintiff filed her First Amended

Complaint.  In addition to alleging that the agency discriminated against her for allegedly taking the actions set forth in the agency's letter dated April 28, 2005, see Exh. 1, plaintiff also alleged that the agency discriminated against her when an employee from Human Resources was rude to her, and that management failed to fully respond for four weeks to her request to telecommute after she suffered three asthma attacks on the job.

On December 1, 2006, the parties entered into a Settlement Agreement.  See Plaintiffs' Memorandum in Support of Plaintiff's Combined Motion for a Temporary Restraining Order and for a Preliminary Injunction ("Plaintiff's Mem.'), Exh. B.  Paragraph 2i of the Settlement Agreement provides that:

> Defendant will laterally transfer Ms. Hughes Cleveland to an IT Specialist position within the ICE CIO's Office involving the Student and Exchange Visitor Information System ("SEVIS").  This Agreement will not change Ms. Hughes Cleveland's current grade level, pay and Federal employment benefits.  In this position, Ms. Hughes Cleveland will receive technical direction from Robert Wilmore, Team Lead for the SEVIS Project.  At the time of signing this Settlement Agreement, Plaintiff's first line supervisor will be Paul Martindale, Branch Director, FPS-SEVP Branch.  Mr. Martindale reports to the Director, System Development Division.

Paragraph 2j of the Settlement Agreement provides in part that:

> Defendant will allow Ms. Hughes Cleveland to telecommute one day per five-day work week for a trial period of six months starting from the date of Ms. Hughes Cleveland's lateral transfer to the FPS/SEVP Branch.  This trial telecommuting arrangement will in all respects comply with and be governed

by the Department of Justice's telecommuting policies and
regulations.  Defendant is in the process of establishing
its own telecommuting policies, and once those policies are
adopted and implemented, Ms. Hughes Cleveland's
telecommuting arrangement will need to comply with, and be
governed by, Defendant's telecommuting policies and
regulations.

The Settlement Agreement also provided that DHS pay
plaintiff the sum of $50,000, and pay her attorney the sum of
$37,000, which included any costs, attorney's fees and expenses
incurred by plaintiff and her counsel.  DHS further agreed to
direct all inquiries from prospective employers to the Deputy
Chief Information Officer, who would provide prospective
employers with only the dates of plaintiff's employment with ICE
and the former INS, the positions held by plaintiff, and the
performance ratings of record for plaintiff.

Plaintiff reported for duty to Mr. Martindale on Tuesday,
December 5, 2006.  Declaration of Paul Martindale, attached as
Exh. 2, ¶ 2.  On Thursday, December 7, 2006, Mr. Martindale
provided plaintiff with a copy of the DHS Management Directive
#3070.2, issued on August 17, 2005, entitled "Telework
Directive", and the OCIO Telework Agreement form.  Exh. 2, ¶ 4.
Since DHS had established its own telecommuting policies, the DHS
directive would serve as the governing policy in lieu of the
Department of Justice policy that was mentioned in the settlement
agreement.  See Plaintiff's Mem., Exh. B at ¶ 2j.

Section VI of the Management Directive provides that

-5-

"Participation in a telework arrangement must include a written telework agreement between supervisor/manager and employee." Exh. 3, attached. The Directive further provides: "Teleworking employees continue to be bound by DHS and OE's standards of conduct, directives, and policies while working at the alternate worksite and/or using Government-furnished equipment." Id.

Plaintiff left a signed copy of the telework agreement on Mr. Martindale's desk late on Thursday, December 14th, but she did not discuss the agreement with him or obtain his approval to begin teleworking on a particular date. Exh. 2, ¶ 5. Mr. Martindale did not know whether plaintiff even had the proper government equipment to work from home. Id.

On Friday, December 15, 2006, plaintiff left a message on Mr. Martindale's voice mail, sometime before 9:00 a.m., stating that she was working from home. Mr. Martindale immediately alerted his Division Director, William McElhaney, as he believed that plaintiff was in violation of the telework directive since he had not discussed the agreement with her; he did not know what she was working on at home; and he still did not know if she had the proper government-furnished equipment in order to work from home. Exh. 2, ¶ 6. Messrs. Martindale and McElhaney called plaintiff at about 9:45 a.m. at the phone number that she listed on her telework agreement, which was a cell phone. Mr. Martindale informed her that she needed to report to work at the

OCIO office because a valid telework agreement was not in place. Id. Plaintiff became upset, alleged that the agency had breached the Settlement Agreement, then abruptly ended the call, stating that she was on another call on her home telephone. Id.

Mr. Martindale received a voice mail message from plaintiff later that day, at approximately 11:00 a.m., stating that she was "tired of this crap." Id. at 7. She further stated that she was working from home and would continue to do so. Mr. Martindale sent plaintiff an electronic mail ("e-mail") message at 12:37 p.m. on that date telling her that she needed to report to work. Id. Plaintiff did not report to work as directed, and Mr. Martindale directed the timekeeper to record her as Absent Without Leave ("AWOL") for that day. Id.

Plaintiff officially began telecommuting on Friday, January 26, 2007, when she had complied with the DHS directive on telecommuting and a valid telework agreement was in effect. Id. at ¶ 8. On February 1, 2007, DHS issued a letter of reprimand to plaintiff for being AWOL on December 15, 2006. Exh. 4, attached.

Upon joining FPS-SEVP branch on December 5, 2006, plaintiff was assigned by Mr. Martindale to work on the re-compete of the SEVIS Operations & Maintenance ("O&M") contract. Plaintiff was directed to assume the lead in the development of the Statement of Work ("SOW") and Independent Government Cost Estimate ("IGCE"). Even though she was the lead on the task, plaintiff

-7-

was required to work with Robert Wilmore, Team Lead for the SEVIS project, as well as Mr. Martindale, as she developed the SOW. Throughout her tenure with the FPS-SEVP branch, she has received technical direction from both Mr. Wilmore and Mr. Martindale, who is also Mr. Wilmore's first line supervisor.  Exh. 2, ¶ 9.

Since much of the work on the SOW and IGCE could be done remotely, and plaintiff would be telecommuting one day per week, these projects were well suited to be plaintiff's first assignments.  While formal training in SEVIS was not required to perform these assignments, plaintiff in fact was provided with demonstrations and informal training by the contract support staff, and had access to the technical documents she needed to complete the tasks assigned.  Exh. 2, ¶ 10.  This included providing plaintiff with a SEVIS overview on January 11, 2007, providing her with electronic project schedules and monthly reports from the SEVIS contractor, and having her participate in SEVIS meetings.  Exh. 2, ¶ 10.  Plaintiff also had access to the Electronic Library Management System, know as ELMS, that contains the technical documentation for SEVIS.  Id.

As the project lead and team lead for SEVIS O&M, Mr. Wilmore was in the best position to determine how plaintiff's knowledge, skills, and abilities could help with SEVIS, and he directed the contract support staff to include plaintiff on the weekly technical meetings.  Exh. 2, ¶ 11.  However, plaintiff would

routinely bypass the management chain and direct the contract staff or other stakeholders to perform work that had not been cleared or authorized by Mr. Wilmore or Mr. Martindale, even when she did not have a full appreciation for the context or history of the issue or problem.  Id.  Mr. Wilmore then had to correct or counter plaintiff's direction to the contract staff.  Id.

Mr. Wilmore tried to give plaintiff some basic assignments to help him out while she was learning the system.  However, after several attempts resulting in more work and effort, he became frustrated by her lack of progress on basic assignments, as well as her blatant disregard and disrespect of his position as the project lead for SEVIS.  Id.  Mr. Wilmore became frustrated to such a degree with plaintiff that he requested that Mr. Martindale reassign him to another project.  Id.  Mr. Martindale sent a message to plaintiff directing her to cease providing any direction to the contract support staff or attempting to communicate with them without first clearing such action through him or Mr. Wilmore.  Id.

Initially plaintiff appeared to be making progress on the SOW, by creating the first draft of the document and also helping to develop the table of contents and structure for the SOW. Exh. 2, ¶ 12.  However, much of the document she created was a "cut and paste" effort from several other existing documents.  While that worked initially, over time the contents and organization

of the SOW needed to flow better and not have so much repetition. Consequently Mr. Martindale had several meetings with plaintiff in an attempt to provide her with guidance and direction, and Mr. Wilmore also attempted to provide input and direction on the SOW.  <u>Id</u>.

Plaintiff, however, challenged and resisted Messrs. Martindale and Wilmore's input. After several iterations, it became apparent to Mr. Martindale that plaintiff was either unwilling or incapable of writing and developing the SOW in a collaborative team effort. Due to some deadlines and concern with the lack of progress on the SOW, Mr. Martindale instructed plaintiff to stop working on the SOW and assigned it to Mr. Wilmore to complete.  <u>Id</u>.  Mr. Martindale then gave plaintiff other assignments in support of SEVIS, such as the Program Management Reviews and some of the Memoranda of Understanding for sharing SEVIS data with other DHS components.  <u>Id</u>.

By letters dated April 2, 2007 and May 8, 2007, and in an e-mail message dated May 16, 2007, plaintiff alleged that DHS breached the Settlement Agreement. On May 31, 2007, DHE's Office for Civil Rights and Civil Liberties issued a final determination on the allegation of breach, finding that it lacked jurisdiction over the settlement agreement and that any new allegations of discrimination should be raised in a new EEO complaint.  <u>See</u> Exh. 5.

On May 24, 2007, pursuant to the Family Medical Leave Act ("FMLA"), plaintiff requested approval of sick leave or, alternatively, advanced sick leave for June 5-6, 2007, due to her husband's upcoming medical appointments for surgery.  Exh. 2, ¶ 13.  On that same date, Mr. Martindale sent plaintiff the requirements for claiming leave under the FMLA, including the form to be used to submit required medical documentation supporting her request.  Id.

On Monday, June 4, 2007, after not having received the necessary documentation from plaintiff, Mr. Martindale sent an e-mail to plaintiff notifying her that if she did not provide the medical documents in advance as required, and did not report to work on Tuesday and Wednesday, her time could be charged as AWOL. Exh. 2, ¶ 14; Exh. 6.  Mr. Martindale requested that plaintiff e-mail or call him as soon as possible to clarify her work status for June 5 and 6.  Plaintiff failed to provide the required medical documentation and did not report to work on June 5 and 6. Id.

On June 7, 2007, plaintiff returned to work and provided a doctor's "Certificate to Return to School/Work" to Mr. Martindale, that stated her spouse was having an outpatient procedure done on June 5, 2007.  However, she advised Mr. Martindale that she was no longer requesting leave under the FMLA, but was requesting court leave for the time period in

question.  Exh. 2, ¶ 15.  She provided Mr. Martindale a copy of a subpoena served on her in the case of <u>Marcia H. Cleveland</u> v. <u>Barbara Julius, et al.</u>, Civil No. 06-04150 (Circuit Court for Prince George's County).  The subpoena indicated that it was requested by plaintiff's attorney, Lawrence S. Lapidus, and the Sheriff's Return was not completed.  Exh. 2, ¶ 15.  The Agency's Office of Human Capital reviewed the subpoena and determined that the subpoena did not meet the criteria for court leave, as plaintiff had had herself subpoenaed for her own case.  <u>Id</u>. Consequently, plaintiff was charged with 18 hours of AWOL for failing to appear at work on June 5-6, 2007.  <u>Id</u>.

On Thursday, June 21, 2007, between 8:45 a.m. and 9:00 a.m., plaintiff called Eric Simpson, who was acting while Mr. Martindale was out of the office, and said she was running late because she was looking for papers that she needed for a meeting with a union representative.  <u>Id</u>. at ¶ 16.  She called Mr. Simpson again around 9:10 a.m. and asked him to provide her with copies of some letters and correspondence that she and Mr. Martindale had had over the past several months.  <u>Id</u>.  Plaintiff did not request leave from Mr. Martindale or Mr. Simpson, by phone or e-mail.  She also did not request any leave in advance and it was not an emergency; in fact, during that call plaintiff advised Mr. Simpson that she was still at home.  <u>Id</u>.  She did not state why she was not in the office, nor did she state the time

that she would report for duty.  Id.  In addition, she did not
report for duty until after 11:00 a.m., although she originally
signed into the office at 9:30 a.m.  Consequently, plaintiff was
charged with two hours of AWOL on June 21, 2007.  Id. at 17.

On June 11, 2007, Mr. Martindale requested that plaintiff
send him an e-mail each day indicating what she planned to
accomplish each day and to send him an e-mail at the end of each
day advising him what she had accomplished.  Exh. 2, ¶ 18.  These
requirements had been in effect with respect to plaintiff's
telework, but were extended to every day as plaintiff was failing
to perform duties as assigned.  Id.; Exh. 7, attached.

On June 26, 2007, plaintiff requested Continuation of Pay
while she pursued a Worker's Compensation claim.  Plaintiff
alleged that she suffered an injury to her back and an anxiety
attack at work on June 25, 2007.  See Exh. 8, attached.
Plaintiff remained out of the office on Continuation of Pay until
August 6, 2007.  Her Worker's Compensation claim was denied.

On June 29, 2007, Terry Johnston issued a decision
suspending plaintiff for five days for Disruptive and
Unprofessional Conduct for arriving late to staff meetings and
for her behavior during a staff meeting on May 16, 2007.  Exh. 9,
attached.  On August 6, 2007, after plaintiff returned to work,
Ms. Johnston notified plaintiff that the five day suspension
would be imposed from August 7-11, 2007.  Exh. 10, attached.

-13-

Plaintiff served the suspension from August 7-11, 2007.  <u>Id</u>.

On August 9, 2007, William S. McElhaney, Director, Systems Development Branch, issued a decision suspending plaintiff for 14 calendar days for Absence Without Leave, Failure to Follow Supervisory Instructions, Delay in Following Supervisory Instructions and Neglect of Duty.  Plaintiff served the suspension from August 14-27, 2007.  <u>See</u> Exh. 11, attached.

On August 28, 2007, the agency served plaintiff with a Notice of Proposed Removal and placed her on administrative leave.  Exh. 12, attached.  No decision has been issued on the Proposed Removal.

<u>ARGUMENT</u>

I.    Plaintiff Bears A Heavy Burden To Justify The
      <u>Grant Of Preliminary Injunctive Relief.</u>

It is well settled that injunctive relief is an extraordinary remedy, and the party seeking it has a substantial burden of proof.  <u>Mazurek</u> v. <u>Armstrong</u>, 520 U.S. 968, 972 (1997).  <u>See</u>, <u>e.g.</u>, <u>Cobell</u> v. <u>Norton</u>, 391 F.3d 251, 258 (D.C. Cir. 2004); <u>Virginia Petroleum Jobbers Ass'n</u> v. <u>Federal Power Comm'n</u>, 259 F.2d 921, 925 (D.C. Cir. 1958).  The Supreme Court in <u>Sampson</u> v. <u>Murray</u>, 415 U.S. 61 (1974), addressed the injunction standard in the context of a federal employment decision.  The Court held that

> [t]he District Court, exercising its equitable
> powers, is bound to give serious weight to the
> obviously disruptive effect which the grant of

-14-

> the temporary relief awarded here was likely to
> have on the administrative process . . . [in
> light of] the well-established rule that the
> Government has traditionally been granted the
> widest latitude in the "dispatch of its own
> internal affairs."

Id., 415 U.S. at 83 (citation omitted).  The Court further noted

that preliminary injunctions in government personnel cases are

generally not available.  Id. at 84.

Consequently, under Sampson, a plaintiff must show: (1) a

substantial likelihood of success on the merits; (2) in the

absence of injunctive relief the plaintiff will suffer

irreparable harm for which there is no adequate legal remedy; and

(3) the irreparable harm outweighs the disruptive effect which

the grant of injunctive relief would be likely to have on the

administrative process and on the government's ability to conduct

its own affairs.  See id., 415 U.S. at 83-84.  The Court of

Appeals for this Circuit has applied the standard set forth in

Sampson in the context of federal personnel decisions.  See

Andrade v. Lauer, 729 F.2d 1475, 1483-84, 1489-90 (D.C. Cir.

1984) (absent serious and irreparable injury to substantial

rights, judicial interference in sensitive area of employee

relations not justified).

Under the factors set forth in Sampson, plaintiff is plainly

not entitled to preliminary injunctive relief.  Not only has she

failed to demonstrate a substantial likelihood of success on the

merits, but she has also failed to show the existence of any irreparable harm or that she has no adequate remedy at law. Consequently, as demonstrated below, her motion should be denied.

   II.   Plaintiff is not Likely to Succeed on the
         Merits of this Case.

Plaintiff alleges that defendant breached the Settlement Agreement entered into in Cleveland v. Chertoff, Civil No. 05-1709 (D.D.C.) (GK), by, first, charging her with AWOL for telecommuting on December 15, 2006, when the Agreement allowed her to telecommute one day a week.  Plaintiff's Mem. at 8. Plaintiff, however, conveniently ignores the part of the Agreement which required the telecommuting arrangement to "comply" with the agency's telecommuting policies and regulations, which were in effect by that time.  Plaintiff's Mem. Exh. B. ¶2j; Exh. 2, ¶¶ 3-4.  One of these requirements was that a written telework agreement between supervisor and employee be put in place before the telecommuting could begin.  Exh. 2, ¶ 4.

This agreement, however, was not in place on December 15, 2006.  Although plaintiff had signed the agreement by that date her supervisor had not completed the agreement with her, which involved items such as verifying that she had the appropriate government equipment to use while working at home.  Id. Accordingly, because the agreement had not been finalized, plaintiff was not entitled, under the Settlement Agreement or DHS's Telework Directive, to begin teleworking on December 15,

-16-

2006.  Id.

    Under such circumstances, the agency properly charged her
with being AWOL, especially given the fact that her supervisor
spoke to her on December 15th, told her to come to work, and she
refused.  Exh. 2, ¶¶ 6-7.  This amounted to insubordination, not
a breach of the Settlement Agreement.

    Plaintiff next argues that the Agreement was breached when
she was not provided with SEVIS training and technical direction
from Mr. Wilmore.  Plaintiffs' Mem. at 8.  On the contrary, the
Agreement only provides that plaintiff would "receive technical
direction from Robert Wilmore," id., Exh. B. ¶ 2i.  Nonetheless,
plaintiff received SERVIS training, as explained in the
Martindale Declaration, and Mr. Wilmore gave her assignments and
included her in technical meetings.  Exh. 2, ¶ 11.  Thus, no
breach of the Settlement Agreement occurred with respect to
plaintiff's work on SERVIS.

    Plaintiff further alleges a breach when the agency
purportedly "removed all SERVIS when she was assigned to this
program as part of the Settlement Agreement."  Plaintiff's Mem.
at 8.  On the contrary, Mr. Martindale explains that although he
took one project away from her – the SOW – after she had
performed poorly in connection with it, he then gave her other
assignments in support of SERVIS.  Exh. 2, ¶ 12.  Nothing in the
Settlement Agreement spells out the specific nature of the

assignments plaintiff was supposed to receive under the
Agreement. Plaintiff's Mem., Exh. B, ¶ 2i. Thus, plaintiff
cannot show that such action constitutes a breach of the
Settlement Agreement.

Plaintiff also alleges a breach of the Settlement Agreement
when she was charged AWOL in June 2007, after being subpoenaed by
herself for court. Plaintiff's Mem. at 8. Since the Settlement
Agreement was signed December 1, 2006, and makes no reference to
how subpoenas for court should be treated, this action plainly
does not violate that agreement. Plaintiff's Mem., Exh. B.
Moreover, as the Martindale Declaration explains, plaintiff was
properly charged AWOL for this event as the subpoena did not meet
the agency's criteria for court leave. Exh. 2, ¶ 15.

Plaintiff's remaining claims are similarly defective. Those
claims, concerning alleged differential treatment, failing to
provide notice of performance deficiencies, and placement on
administrative leave in connection with a proposed termination,
relate to no provision in the Settlement Agreement. Plaintiff's
Mem. at 8. Indeed, plaintiff makes no effort to show that these
actions violated specific terms of the Settlement Agreement, and
the proposed termination came well after the Settlement Agreement
had been signed. Id., Exh. B.

The Martindale Declaration amply demonstrates the agency's
well-founded reasons for proposing plaintiff's termination and

placing her on administrative leave pending a final decision.  An
ever escalating series of actions constituting misconduct on the
job have brought plaintiff to this result.  It is undisputed that
no final decision has yet been made, but plaintiff's continual
instances of AWOL and inappropriate action, <u>see</u> Exh. 2, ¶ 15,
amply warrant the action taken to date.

Plaintiff cannot show that she has a substantial likelihood
of success on the merits of her claims.  Indeed, as the
Martindale Declaration shows, her chance of success is next to
none.

### III. Plaintiff has Failed to Establish that <u>She will Suffer any Irreparable Injury.</u>

Plaintiff is required to establish that in the absence of
preliminary injunctive relief she will suffer irreparable injury.
To constitute irreparable harm, the injury must be certain and
great; it must be actual and not theoretical.  <u>Wisconsin Gas Co.</u>
v. <u>FERC</u>, 758 F.2d 669, 674 (D.C. Cir. 1985).  Moreover, in order
to be "irreparable," plaintiff must have no adequate remedy at
law available to them.   <u>Id</u>.

Plaintiff argues that she will suffer irreparable injury
because she is on administrative leave and faces a proposed
termination.  Plaintiff's Mem. at 10.  Plaintiff offers no
explanation as to why either of these two events constitute
irreparable injury.  <u>Id</u>.  Plaintiff is suffering from no loss of

pay or benefits at present.  Plaintiff also cites no authority for the proposition that administrative leave constitutes irreparable injury.  Moreover, should plaintiff receive a final agency decision of termination, she will have appeal rights to the Merit System Protection Board [MSPB].  5 C.F.R. § 1201.3(a). A prevailing party before the MSPB is entitled, among other things, to back pay and attorney's fees.  5 U.S.C. § 5596 and 7701(g); 5 C.F.R. 550.805 and 1201.37.  This presents plaintiff with an adequate remedy at law for the personnel action which she fears will occur.

Plaintiff also has an adequate remedy at law by virtue of her EEO Complaint.  Plaintiffs in Title VII actions are entitled to seek compensatory damages, back pay and attorney's fees.  See 42 U.S.C. § 1981a; 29 C.F.R. § 1614.501(e); 29 C.F.R. § 1614.501(c).

It is well established that monetary losses alone are insufficient to satisfy the irreparable injury test because such losses are not considered irretrievable.  "[E]conomic loss does not, in and of itself, constitute irreparable harm."  E.g., Wisconsin Gas Co. v. FERC, 758 F.2d 669 at 674.  Because the injuries plaintiff alleges can be redressed monetarily in the unlikely event that plaintiff prevails on the merits of her claims, she has failed to allege any irreparable injury subject to emergency injunctive relief.

-20-

IV.  The Remaining Factors Do Not Support
     The Issuance of A Preliminary Injunction

Under Sampson v. Murray, preliminary injunctive relief may
not be granted unless the Court finds that the irreparable harm
outweighs the disruptive effect such relief would have on the
government's ability to manage its internal operations,
especially in the area of personnel issues.  Id., 415 U.S. at 83-
84.  As demonstrated above, however, plaintiff has failed to make
any showing that she will suffer irreparable harm absent the
relief sought.

By contrast, an order by this Court to prohibit the ICE from
terminating plaintiff's employment if it reaches such a decision,
or to require the ICE to handle its internal affairs in a
particular manner, would be highly disruptive to the government's
right to manage its own internal affairs.  Furthermore, it would
also be disruptive to the comprehensive statutory schemes
Congress created for managing federal employment disputes.

The balance of the equities clearly lie with the ICE.  Even
if plaintiff can demonstrate that she has been harmed by actions
taken by the ICE, she can be compensated by money damages or seek
reinstatement if she is terminated and ultimately prevails on the
merits.  However, were the Court to grant the requested relief,
it would disrupt the personnel functions of the ICE and clearly
interfere with the government's right to the "widest latitude in
the dispatch of [its] internal affairs."  Sampson v. Murray, 415

U.S. at 83.  Plaintiff simply has not demonstrated any irreparable injury that would outweigh the government's interest in unfettered internal regulation.

CONCLUSION

For the foregoing reasons, defendant respectfully submits that plaintiff's request for emergency injunctive relief should be denied.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARCIA H. STODDARD,                    )
                                       )
          Plaintiff,                   )
                                       )
          v.                           )   Civil No. 07-1643 (GK)
                                       )
MICHAEL CHERTOFF,                      )
SECRETARY,                             )
U.S. Dept. of Homeland Security,)
                                       )
          Defendant.                   )
_____)

ORDER

     Upon consideration of plaintiff's motion for emergency

injunctive relief, defendant's opposition, and the entire record

of this case, it is hereby

     ORDERED that plaintiff's motion is denied.


Dated this _____ day of _____, 2007.


                              _____
                              UNITED STATES DISTRICT JUDGE

Copies to:


Marina Utgoff Braswell
Assistant United States Attorney
U.S. Attorney's Office
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C.  20530


David A. Branch, Esq.
Law Office of David A. Branch
1825 Connecticut Ave., N.W.
Washington, D.C. 20009

04/19/2005 07:22 FAX 8127233239        ICE TWCEEO HQ. SUB-OFC    → FFG        ☐002

U.s. Department of Homeland Security
1 Federal Drive, Room G-56C
Twin Cities, MN 55111



**U.S. Immigration
and Customs
Enforcement**

HQEEO 60/7

**THIRD AMENDED**

APR 2 8 2005

Ms. Marcia H. Cleveland
1602-Dickens Place
Upper Marlboro, MD 20774

Re: Complaint No.: ICE-05-H083
Date Filed: December 15, 2004

Dear Ms. Cleveland:

The purpose of this letter is to amend the previous letter sent to you on or about April 19, 2005, to correct an error in the framing of issue 11.

Your complaint has been assigned number ICE-05-H083 and has been accepted on the bases of race (Not Specified), sex (Female), disability (Not Specified), and reprisal (prior EEO activity). You alleged to have been subjected to a continuous pattern of harassment as evidenced by the following.

1.  Since January 2004 you have been admonished not to violate the chain of command when raising questions or concerns.

2.  Since June 2004 you have been denied a desk audit. You allege that you have long been performing at the GS-14 or GS-15 level without the appropriate pay and grade compensation levels.

3.  Subsequent to July 7, 2004, the agency failed to advise you of the status of your candidacy for the position announced under vacancy announcement 2003-DHS-ADS-31-1-TM. Subsequently, the agency failed to advise you that the vacancy announcement in question was subsequently cancelled.

4.  In August 2004 management officials denied your request to telecommute from home.

5.  In August 2004 management officials questioned and challenged you about your work schedule or the hours during which you worked.

*EX 2    1.44*

EXHIBIT

☐

04/20/2006 07:22 FAX 0127253239        ICE TWCEEO HQ. SUB-OFC    → PPL

Ms. Marcia Cleveland
Page 2

6. As of September 2004 the agency failed to approve your application for agency repayment of your federal student loan. Moreover, management officials failed to or refused to properly process your paperwork for student loan reimbursement.

7. As of September 2004 the agency failed to reimburse you for your graduate school tuition costs.

8. In September 2004 your supervisor referred to you in a derogatory manner and challenged or questioned your trustworthiness. You also allege that your supervisor uses a demeaning and insulting term when speaking to you.

9. On October 13, 2004, you received a harassing and threatening anonymous telephone call. You believe that a co-worker made this telephone call.

10. Subsequent to October 27, 2004, you were disparately treated with respect to the degree to which management officials requested and required medical documentation from you pertaining to a surgical procedure.

11. Effective March 2, 2005, you were being placed in an Absent Without Leave status.

12. In March 2005, you were informed that it was too late for you to file for Continuation of Pay relating to a workplace injury that occurred on September 23, 2004, and that if you missed any more work you would have to be placed in a Leave Without Pay status.

13. The agency has assigned a contract employee the responsibility for handling sensitive personnel issues of federal employees, including some of your personnel issues.

14. In March 2005, you became aware that you were reassigned from the Administrative Systems Section to the Financial Systems Section, which has resulted in the minimization of your duties, and that the individual who was now handling your former responsibilities had been promoted to a GS-14 pay grade.

15. On or about March 22, 2005, your supervisor denied your request to telecommute from home three (3) hours a day, despite you having provided her with medical documentation from your physician.

16. On or about March 22, 2005, your supervisor denied your request for advanced sick leave for the three (3) hours a day you had requested to telecommute.

17. In March 2005, when you contacted an individual in human resources about continuing in the voluntary leave program he was rude to you and, when you inquired about your rights under the Family and Medical Leave Act, he informed you that you needed to fill out an another set of paperwork even though you had already filled out similar paperwork in October 2004.

EX 2    2 44

06/29/2005 07:23 FAX 6127253239          ICE TWCEEO HQ. SUB-OFC    → FFG

Ms. Marcia Cleveland
Page 3

18. On or about April 12, 2005, your supervisor failed to grant you official time for April 12 and 13, 2005, which was necessary to complete an affidavit for the investigation of your complaint, and, as a result of this action, you were forced to use annual leave and leave without pay in order to accomplish this task.

Allegation numbers 1 through 12 and 14 through 16 and 18 have been accepted for investigation. You will receive notification regarding the assignment of an Equal Employment Opportunity (EEO) investigator under separate cover. Please be advised that all other references contained in the formal complaint will be used as background information to support the accepted issues.

If you believe that the accepted issue in this complaint has not been correctly framed, please notify me in writing (certified mail), within five (5) calendar days after you receive this letter. You must specify why you believe the issues have not been correctly identified. If you fail to notify me within this timeframe, I will conclude you agree that the issue has been properly identified.

If you wish to report additional allegations or incidents, they must be submitted to the Director, EEO, in writing. If the Director concludes that the additional allegations do not raise a new issue but rather provide additional evidence or are like or related to the allegations accepted in this letter, your complaint may be amended to include these allegations. If the Director concludes that the additional allegations raise a new issue, you will be required to seek counseling. You will be notified of the Director's decision in writing.

With regard to issues 13 and 17, under Title 29 CFR 1614.107(a), an agency may dismiss any complaint, or portion of a complaint, that fails to state a claim under subsections Title 29 CFR 1614.103 or 1614.106(a). To state a claim, an individual must be an "aggrieved employee" within the scope of Title 29 CFR 1614.103, which the Equal Employment Opportunity Commission (EEOC) has defined as one who sustains a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. Diaz v. Department of the Air Force, EEOC Appeal No. 05931049 (1994). "An agency is required to address EEO complaints only when filed by an individual who has suffered direct, personal deprivation at the hand of the employer; the agency's act must have caused some concrete effect on the aggrieved person's employment status." Quinones v. Department of Defense, EEOC Appeal No. 05920051 (1992). With regard to issues 14 and 17, you have failed to identify how you have suffered a concrete harm related to the terms and conditions of your employment as a result of the complained of actions.

Title 29 CFR 1614.107(a)(1) provides that the agency shall dismiss a complaint or portion of a complaint:

> That fails to state a claim under Parts 1614.103 or 1614.106(a) or states the same claim that is pending before or has been decided by the agency or Commission.

Accordingly, the matter raised in issues 13 and 17 are dismissed in accordance with Title 29 CFR 1614.107(a)(1).

*Ex 2    3-44*

Ms. Marcia Cleveland
Page 4

## NOTICE OF RIGHTS

The decision not to accept one or more issues for investigation is reviewable by an EEOC
Administrative Judge (AJ) and the Department of Homeland Security, Office of Civil Rights and
Civil Liberties (OCRCL). If you request a hearing and the EEOC AJ believes that all or a part of our
reasons are not sound, the entire complaint or all of the portions not meeting the criteria for dismissal
will continue in the hearing process. The EEOC AJ's decision on the partial dismissal may be
appealed by either party after final action is taken on the complaint.

If you request a final agency decision without a hearing, OCRCL will issue a decision addressing all
claims in your complaint, including a review of the rationale for dismissing part of your complaint
and its findings on the merits of the remainder of your complaint. You have the right to appeal the
final agency decision to the EEOC. Your appeal rights will be included in the OCRCL decision.

You also have the right to file a civil action in an appropriate United States District Court following
Title 29 CFR 1614.407. If you choose to file a civil action, you may do so:

- within 90 days of receipt of the final decision if no appeal has been filed, or

- within 90 days of receipt of the EEOC's final decision on your appeal, or

- after 180 days from the date of filing an appeal with the EEOC if there has been no
  final decision by the EEOC, or

- after 180 days from the date of the filing of the complaint if an appeal has not been
  filed and a final agency decision has not been issued.

In your appeal or civil action, you must name the appropriate agency or Department head as the
defendant. In you case, you must name the Secretary of the Department of Homeland Security,
Michael Chertoff. Failure to provide this information may result in the dismissal of his case.

If you decide to file a civil action under Title VII or under the Rehabilitation Act, and if you do not
have or cannot afford an attorney, you may request that the court appoint an attorney to represent
you. The court may permit you to file the action without payment of fees, costs or other security.
The granting or denial of the request is within the sole discretion of the court. Filing a request for an
attorney does not extend your time to file a civil action.

Sincerely,

*Judy S. Mallsy*

D. Diane Weaver
Director
Office of Equal Employment Opportunity

EX 2          4 44

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MARCIA H. STODDARD** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:07-1643 (GK)** |
| | ) | |
| **MICHAEL CHERTOFF, Secretary,** | ) | |
| **U.S. Department of Homeland Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DECLARATION OF PAUL MARTINDALE

I, Paul Martindale, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am currently employed as the Branch Director, FPS-SEVP Branch, Office of the Chief Information Officer ("OCIO"), U.S. Immigration and Customs Enforcement ("ICE"), U.S. Department of Homeland Security ("DHS"), 801 I Street, N.W., Washington, DC. As the Branch Director of the PFS-SEVP Branch, my job responsibilities include: leading and supervising the Branch responsible for all information technology ("IT") systems used by the Student Exchange Visitors Program ("SEVP") and the Federal Protective Service ("FPS") in the performance of their law enforcement mission within ICE. The Branch provides project management expertise for all facets of the major IT applications used by the SEVP and FPS programs including cost, schedule, performance, and risk management throughout their lifecycle. I also serve as the customer focal point and liaison with the SEVP and FPS programs for all other OCIO services that are provided. My responsibilities include acquisition management, software life cycle management, configuration management, information systems security management, and cost-benefit analysis / business case justification for the



major applications that are supported.  One of the major applications that I support on behalf of SEVP is the Student Exchange Visitors Information System (SEVIS).

2. Pursuant to a Settlement Agreement entered into between Marcia H. Stoddard, formerly known as Marcia H. Cleveland, and the U.S. Department of Homeland Security, I became Ms. Stoddard's first line supervisor.  Ms. Stoddard reported to my branch for duty on December 5, 2006.

3. I was aware that the Settlement Agreement provided that Ms. Stoddard would be permitted to telecommute one day per five-day work week for a trial period of six months starting from her transfer into my branch.  I understood that the Settlement Agreement also provided that the telecommuting arrangement must comply with and be governed by the Department of Justice's telecommuting policies and regulations, and that it must comply with DHS's telecommuting policies once those policies were adopted and implemented.

4. On December 7, 2006, I provided Ms. Stoddard with copies of the DHS Management Directive #3070.2, captioned Telework Directive and the OCIO Telework Agreement Form.  Section VI of the Management Directive provides that "Participation in a telework arrangement must include a written telework agreement between supervisor/manager and employee," and that "Teleworking employees continue to be bound by DHS and OE's standards of conduct, directives, and policies while working at the alternate worksite and/or using Government-furnished equipment."

5. Late in the day on Thursday, December 14, 2006, Ms. Stoddard left a signed copy of the telework agreement on my desk, but she did not discuss the agreement with me or obtain my approval to begin teleworking on a particular date, and I did not know if she had the proper Government-furnished equipment in order to work from home.

6. On Friday, December 15, 2007, Ms. Stoddard left a message on my voice mail sometime before 9:00 a.m. stating that she was working from home. I immediately alerted my first line supervisor, Division Director, William McElhaney, as I believed that Ms. Stoddard was in violation of the telework directive since I had not discussed the agreement with her, did not know what she was working on at home, and did not know if she had the proper Government-furnished equipment in order to work from home. Mr. McElhaney and I called Ms. Stoddard at about 9:45 a.m. at the phone number that she listed on her telework agreement, which was a cell phone. She answered and I informed her that she needed to report to work at the OCIO office because a valid telework agreement was not in place. Ms. Stoddard became upset, alleged that the agency had breached the Settlement Agreement, then abruptly ended the call, stating that she was on another call on her home telephone.

7. I received a voice mail message from Ms. Stoddard at approximately 11:00 a.m. on December 15, 2007, stating that she was "tired of this crap." She further stated that she was working from home and would continue to work from home. I sent Ms. Stoddard an electronic mail ("e-mail") message at 12:37 p.m. on that date stating that she needed to report to work. Ms. Stoddard did not report to work as directed, so I directed the timekeeper to record her as AWOL for that day.

8. Ms. Stoddard officially began telecommuting on Friday, January 26, 2007, when she had complied with the DHS directive on telecommuting and a valid telework agreement was in effect.

9. Upon joining FPS-SEVP branch on December 5, 2006, I assigned Ms. Stoddard to work on the re-compete of the SEVIS Operations & Maintenance ("O&M") contract. I directed her to assume the lead in the development of the Statement of Work ("SOW") and

Independent Government Cost Estimate ("IGCE"). Even though she was the lead on the task, Ms. Stoddard was expected and required to work with Robert Wilmore, Team Lead for the SEVIS project, and me as she developed the SOW. Throughout her tenure with the FPS-SEVP branch, she has received technical direction from both Mr. Wilmore and me. I am also Mr. Wilmore's first line supervisor.

10. Since much of the work on the SOW and IGCE could be done remotely and Ms. Stoddard would be telecommuting one day per week for a trial period of six months, these projects were well positioned as Ms. Stoddard's first assignments. While formal training in SEVIS was not required to perform this type of work, Ms. Stoddard was provided with demonstrations and informal training by the contract support staff, and had access to the technical documents she would need to complete the tasks assigned. For example, Plaintiff was provided with a SEVIS overview on January 11, 2006; received electronic project schedules and monthly reports from the SEVIS contractor; and participated in SEVIS meetings. Plaintiff also had access to the Electronic Library Management System, know as ELMS, that contains the technical documentation for SEVIS.

11. As the project lead and team lead for SEVIS O&M, Mr. Wilmore was in the best position to determine how Ms. Stoddard's knowledge, skills, and abilities could help with SEVIS. Mr. Wilmore directed the contract support staff to include Ms. Stoddard on the weekly technical meetings. However, Ms. Stoddard routinely stepped beyond her knowledge base and management chain to direct the contract staff or other stakeholders to perform work that was not cleared or authorized by Mr. Wilmore or me. Consequently, I am aware that Mr. Wilmore had to correct or counter Ms. Stoddard's direction to the contract staff, and she often did not have a full appreciation for the context or history of the issue or problem. Mr. Wilmore tried to

give Ms. Stoddard some basic assignments to help him out while she was learning the system. However, after several attempts resulting in more work and effort, he expressed to me his frustration by her lack of progress on basic assignments as well as her blatant disregard and disrespect of his position as the project lead for SEVIS. Mr. Wilmore became frustrated with Ms. Stoddard to such a degree that he requested that I reassign him to another project. I assured Mr. Wilmore that I was managing Ms. Stoddard. I then sent a message to Ms. Stoddard directing her to cease providing any direction to the contract support staff or attempting to communicate with them without first clearing her input through Mr. Wilmore or me.

12. Initially Ms. Stoddard appeared to be making progress on the SOW. She created the first draft of the SOW and also helped develop the table of contents and structure for the SOW. However, much of the document she created was a cut and paste effort from several other existing documents. While that worked for the first draft or two, over time, the contents and organization of the SOW needed to flow better and not have so much repetition. Consequently I had several meetings with Ms. Stoddard in an attempt to provide her with guidance and direction. Mr. Wilmore also attempted to provide input and direction on the SOW. However, Ms. Stoddard challenged and resisted our input. After several iterations, it became apparent to me that she was either unwilling or incapable of writing and developing the SOW in a collaborative team effort. Due to some deadlines and concern with the lack of progress on the SOW, I instructed Ms. Stoddard to stop working on the SOW and assigned it to Mr. Wilmore to complete. I then gave Ms. Stoddard other assignments in support of SEVIS, such as the Program Management Reviews and some of the Memoranda of Understanding for sharing SEVIS data with other DHS components.

13. On May 24, 2007, Ms. Stoddard requested approval of sick leave or, alternatively advanced sick leave for June 5-6, 2007, pursuant to the Family Medical Leave Act ("FMLA") due to her husband's upcoming medical appointments for surgery. On that same date, I sent her the requirements for claiming leave under the FMLA, including the form to be used to submit required medical documentation supporting her request.

14. On Monday, June 4, 2007, after not having received the necessary documentation from Ms. Stoddard, I sent her an e-mail notifying her that if she does not provide the medical documents in advance and does not report to work on Tuesday and Wednesday, her time may be charged as AWOL. I requested that she e-mail or call him as soon as possible to clarify her work status for June 5 and 6. However, Ms. Stoddard did not provide the required medical documentation and did not report to work on June 5 and 6.

15. On June 7, 2007, Plaintiff returned to work and gave me a doctor's "Certificate to Return to School/Work" that stated her spouse was having an outpatient procedure done on June 5, 2007. She then told me that she was no longer requesting leave under the FMLA, but was requesting court leave. She also gave me a copy of a subpoena that was addressed to Marcia H. Cleveland (Stoddard) in the case of *Marcia H. Cleveland v. Barbara Julius, et al.*, Circuit Court for Prince George's County, Case Number 06-04150. I forwarded the subpoena to the DHS, ICE Office of Human Capital in order to determine if the subpoena met the criteria for court leave, as Plaintiff had herself subpoenaed for her own case. I was advised by the ICE Office of Human Capital that the subpoena did not meet the criteria for court leave. Consequently, I directed the timekeeper to charge Ms. Stoddard with 18 hours of AWOL for failing to appear at work on June 5-6, 2007.

16. On Thursday, June 21, 2007, I was out of the office for training, and Eric Simpson was acting for me. I was advised by Mr. Simpson that between 8:45 a.m. and 9:00 a.m. on that date, Ms. Stoddard called him and said she was running late because she was looking for papers that she needed for a meeting with a union representative. Mr. Simpson advised me that Ms. Stoddard called him again around 9:10 a.m. and asked him to provide her with copies of some letters and correspondence that she and I had had over the past several months. Ms. Stoddard did not request leave from me or Mr. Simpson, by phone or e-mail. She also did not request any leave in advance and it was not an emergency. Mr. Simpson advised me that Ms. Stoddard said that she was still at home, and she did not state why she was not in the office, nor did she state the time that she would report for duty.

17. I learned that Ms. Stoddard did not report for duty until after 11:00 a.m. on June 21, 2007, although she originally signed into the office at 9:30 a.m. Consequently, I directed the timekeeper to charge Ms. Stoddard with two hours of AWOL on June 21, 2007.

18. On June 11, 2007, I requested that Ms. Stoddard send me an e-mail each day indicating what she planned to accomplish each day, and send me another e-mail at the end of each day to advise me what she had accomplished. These requirements had been in effect with respect to Ms. Stoddard's telework, but were extended to every day since Ms. Stoddard was failing to perform duties that had been assigned to her.

I declare under penalty of perjury that the foregoing is true and correct.

_____    9/25/07
PAUL MARTINDALE                       DATE

7

Department of Homeland Security
Management Directive
MD Number: 3070.2
**Issue date: 08/17/2005**

# TELEWORK DIRECTIVE

## I.   Purpose

This Management Directive (MD) establishes Department of Homeland Security (DHS) policy regarding telework. DHS supports Public Law 106-346 (FY 2001 Department of Transportation and Related Agencies Appropriations Act) Section 359, which promotes a policy under which eligible employees of the agency may participate in telecommuting to the maximum extent possible without diminished employee performance or mission accomplishment.

## II.   Scope

This MD applies to all DHS Organizational Elements (OEs). This MD applies to all DHS employees, except those excluded by law or Executive Order from coverage under P.L. 106-346, Section 359 and those employees deemed ineligible by the agency to participate in the telework program.

## III.   Authorities

The following laws, regulations, orders, policies, directives, and guidance govern this MD:

A.   P.L. 106-346, "Making appropriations for the Department of Transportation and related agencies for the fiscal year ending September 30, 2001, and for other purposes," Section 359 and accompanying conference report

B.   P.L. 105-277, "Making omnibus consolidated and emergency appropriations for the fiscal year ending September 30, 1999, and for other purposes," Title IV, "Domestic Food Programs," Section 630, "Flexiplace Work Telecommuting Programs."

C.   P.L. 104-52, "Making appropriations for the Treasury Department, the United States Postal Service, the Executive Office of the President, and certain Independent Agencies, for the fiscal year ending September 30, 1996, and for other purposes," Section 620.

D.   OPM Guide to Processing Personnel Actions, Chapter 23

E.   OPM Memorandum to Executive Heads of Agencies, subject: Establishing Telecommuting Policy dated February 9, 2001.

MD # 3070.2



F.    OPM Memorandum to Executive Heads of Agencies, subject: Washington, DC Area Dismissal or Closure Procedures dated December 4, 2003.

# IV.  Definitions

A.    *Alternative Worksites*: A place where individuals perform official duties away from the primary office.  They can be in the employee's home, a telework center, or another approved location equipped with standard office technology which includes phones, personal computers, faxes, printers, copiers, e-mail, internet access, etc.

B.    *Eligibility Criteria (job related)*:  An occupation or position is eligible for telework if, either regularly or occasionally, performance of some or all of its duties is away from the principal place of duty.

C.    *Organizational Element (OE)*:  As used in this MD, DHS OE is as defined in DHS MD 0010.1, "Management Directive System and DHS Announcements," or subsequent versions.

D.    *Qualifying Criteria (employee related)*:  Requirements an employee must meet to participate in a telework arrangement (e.g., performance rating of at least fully successful or equivalent, no pending disciplinary action, limited time in agency).

E.    *Telework*: Any arrangement in which an employee regularly performs officially assigned duties at home or other worksites geographically convenient to the residence of the employee and away from the traditional worksite.

F.    *Telework Agreement*: A written agreement, completed and signed by the participating employee and appropriate official(s) in his or her OE, that outlines the terms and conditions of the telework arrangement.

G.    *Telework Centers*: A General Services Administration (GSA) or other approved facility established by state, local, or county governments or private sector organizations for use by teleworkers.  Telework centers are alternative worksites; typically, facilities that house workstations either rented or leased providing a professional atmosphere conducive to effective job performance.  Generally, a telework center is closer to the employee's home, reducing commuting time.  Make annual payment for use of GSA telecenters using GSA's "Telecommuting Facility Reimbursement Information Sheet."

H.    *Telework Schedules*:  Telework may be defined as "episodic or situational" or "core," as described below.

MD # 3070.2

1.    *Situational or Episodic Telework*:  The employee teleworks on an occasional, non-routine, irregular basis.  Individuals can also use this type of telework during potential emergency situations or as an integral part of DHS's plans for Continuity of Operations Plans (COOP), allowing the Federal Government to remain responsive to the nation at all times.

2.    *Core Telework*:  The employee teleworks on a routine, regular, and recurring basis one or more days per week.  Individuals can conduct core telework on a full time or part time basis.

I.    *Traditional worksite*:  The primary location where an employee would usually report for their workday absent a telework agreement.

# V.   Responsibilities

A.    *The Secretary of the Department of Homeland Security*:

1.    Shall be responsible for ensuring that DHS complies with any applicable laws, regulations, and Executive Orders.

2.    Resolves major issues of non-concurrence.

B.    *The Under Secretary for Management* is responsible for the management and administration of DHS's Telework Program.

C.    *DHS Chief Human Capital Officer (CHCO)*:

1.    Establishes DHS policy on telework.

2.    Oversees the administration of the Telework Program within each OE.

3.    Advises the Secretary and Under Secretary for Management on issues involving telework.

4.    Provides and interprets DHS policies and standards for telework programs.

5.    Provides DHS officials with technical assistance and consultative services for complex teleworking issues.

D.    *The Head of the DHS OEs*:

1.    Develops specific guidelines on telework necessary to implement this policy within the organization; guidelines must include a requirement for a written agreement between supervisor/manager and the employee.

MD # 3070.2

2.    Administers the telework program in accordance with P.L. 106 346, Section 359 and any relevant DHS regulations and guidelines. The program shall establish security controls that must be addressed through a written telework agreement outlining the terms and conditions of the telework arrangement.

3.    Designates an OE Telework Coordinator to administer and oversee implementation of the telework program in the OE.

4.    Prepares, maintains, and reports any data necessary for the Telework Program for the Chief Human Capital Officer on an annual or as required basis.

## VI.  Policies and Procedures

A.    It is DHS policy to make telecommuting available to the maximum extent possible without negatively impacting mission accomplishment.

B.    Individuals can also use Telework as an integral part of DHS's plans for Continuity of Operations Plans (COOP) to ensure that DHS functions smoothly in times of emergency, disasters, or inclement weather. It provides a means for DHS and its OEs to respond to rapidly changing factors and to remain responsive to the Nation at all times.

C.    Participation in a telework arrangement is a management prerogative and not an employee entitlement or right.

D.    Each OE shall develop its own telework plan based on its unique set of work conditions, requirements, and priorities. Any implementing telework regulations or other guidance developed by DHS OEs must comply with this MD, as well as from derived laws.

E.    Participation in a telework arrangement must include a written telework agreement between supervisor/manager and employee.

F.    Telework is not a substitute for dependent care (of children and other family members). Telecommuters must make other arrangements for dependent care.

G.    Employee rights provided for in the collective bargaining agreement are not affected by participation in the Telework Program.

H.    Teleworking employees continue to be bound by DHS and OEs' standards of conduct, directives, and policies while working at the alternate worksite and/or using Government-furnished equipment.

l.      Teleworking employees are subject to ensuring that records subject to Privacy Act and sensitive or classified data are not disclosed to anyone except those who are authorized access to such information in order to perform their duties. Individuals may not remove classified data from employees' official work sites to alternative worksite locations. OEs allowing employees access to records subject to the Privacy Act from a remote work site must provide that appropriate administrative, technical, and physical safeguards are available to ensure the security and confidentiality of the records. OEs may need to revise appropriate system of records notices to indicate that Privacy Act records are maintained at off-site system locations.

## VII. Questions

Address questions or concerns regarding this MD to the Office of the Chief Human Capital Officer (CHCO).

MD # 3070.2

*Office of the Chief Information Officer*

U.S. Department of Homeland Security
801 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

MEMORANDUM FOR:     Marcia Cleveland
                    IT Specialist

FROM:               Paul Martindale
                    Director, FPS/SEVP IT Systems Branch

SUBJECT:            Letter of Reprimand

The purpose of this memorandum is to officially reprimand you for absence without leave
(AWOL) on Friday, December 15, 2006. You did not report to work that day and did not
obtain my approval for your absence. When I contacted you at home and via e-mail on
December 15th and requested that you report to work you indicated you were teleworking, but
this had not been approved in advance. DHS teleworking policy requires a signed agreement
and approval from your supervisor to work outside of the office. I had provided you a copy of
the policy and the telework agreement form on December 7, 2006, but we had not discussed,
reviewed, or signed the agreement. I hope that this reprimand will impress upon you the
seriousness of your actions and that future discipline will not be necessary. Future misconduct
may lead to further and more severe disciplinary action, up to and including removal from the
Federal service.

This reprimand will be placed in your Official Personnel Folder (OPF) for two years, during
which it may be cited as a prior formal disciplinary action in any future disciplinary matter.
However, I may decide to remove the letter prior to the expiration of the two year period, if
there is no further misconduct. Once it is removed from your OPF, it may still be used as
evidence that you were on notice about the conduct in question.

Within ten (10) days, you have the right to prepare and submit a concise statement (no more
than two pages) of disagreement. The statement will be considered, and if appropriate, the
letter of reprimand may be modified or withdrawn. If the letter of reprimand is not withdrawn,
the statement of disagreement will be filed with the letter of reprimand in your Official
Personnel Folder.

You have the right to contest this reprimand through one of the avenues outlined below. You
may elect only one avenue and your election will be considered final on the date any appeal,
dispute, or complaint is filed.

    1.     You may file a grievance under the provisions of NINSC Agreement 2000. If
            you choose to file a grievance, it must be filed within twenty (20) calendar days
            of your receipt of this notice.



EXHIBIT

4

SUBJECT: Letter of Reprimand
Page 2

2.  If you believe this action resulted from prohibited discrimination based on race, color, religion, sex, national origin, physical or mental disability, age (40 or over), and/or because of participation in the Equal Employment Opportunity process, you may include this allegation when appealing to the MSPB or you may initiate a discrimination complaint by seeking pre-complaint counseling by contacting the ICE EEO complaint intake office at 949-360-3517. If you choose to contact the EEO office, you must do so within 45 calendar days of the effective date of this action.

If you have any questions concerning this notice, your rights, or the procedures regarding this action, you may contact Ms. Carol Rice, Headquarters Employee and Labor Relations Office at 202-514-9436 or carol.h.rice@dhs.gov.

If you need assistance in dealing with any personal matters, the Employee Assistance Program (EAP) is available to provide confidential counseling services. The EAP can be reached by calling 1-800-222-0364.

Please sign the acknowledgement of receipt below. Your signature does not indicate agreement with this reprimand, and by signing, you do not forfeit any of your rights cited above. Your signature only represents your receipt of this notice on the date signed.

_____          ___2/1/07___
Paul Martindale                            Date

Acknowledgement of Receipt:

_____          ___2-1-07___
Marcia H. Cleveland                        Date

*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528


**Homeland Security**

*Complaint of Marcia H. Cleveland v. Michael Chertoff,*
*Secretary, Department of Homeland Security*
Agency Number HS 07-ICE-001220

**MAY 3 1 2007**

<u>**CERTIFIED MAIL**</u>
<u>**RETURN RECEIPT REQUESTED**</u>

Marcia H. Cleveland
1602 Dickens Place
Upper Marlboro, MD 20774

Dear Ms. Cleveland:

This is the Department of Homeland Security's (DHS) response to your letters of April 2 and May 8, 2007, along with your email of May 16, 2007, in which you alleged that U.S. Immigration and Customs Enforcement (ICE) breached an agreement (Agreement) reached in this case. The Agreement was in settlement of your complaint that you filed in the U.S. District Court for the District of Columbia.[1] DHS will decide this allegation in accordance with the Equal Employment Opportunity Commission (EEOC) regulations at Title 29, Code of Federal Regulations (C.F.R.), Part 1614.

In the April 2, 2007 letter, you alleged breach through the conduct of your supervisor and the Division Branch Chief (DBC) when:

> (1)    On December 15, 2006, you were not allowed to telecommute one day per week as provided in the Agreement.

> (2)    You were placed on Away Without Leave (AWOL) status for December 15, 2006.

> (3)    A Letter of Reprimand was placed in your Official Personnel File (OPF).

In the same letter, you further stated that you filed a new complaint, alleging that your supervisor and the DBC committed breach and discriminated against you on the bases of race, color, reprisal, and disability when:

> (4)    Your supervisor went beyond OPM guidelines and requested medical documentation when you were out on sick leave for fewer than three days.

> (5)    You were not allowed to work from home, yet your supervisor allowed a White male to do such, and to communicate with the office via his personal email account.

---

[1] Civil Action No. 05-1709 (GK).


**EXHIBIT**
5

The letter focused upon paragraph 2(j) of the Agreement. Paragraph 2(j) provides:

> Pursuant to this Agreement, Defendant will allow [you] to telecommute one day per five-day work week for a trial period of six months starting from the date of [your] lateral transfer to the FPS-SEVP Branch. This trial telecommuting arrangement will in all respects comply with and be governed by the Department of Justice's telecommuting policies and regulations. Defendant is in the process of establishing its own telecommuting policies, and once those policies are adopted and implemented, [your] telecommuting arrangement will need to comply with, and will be governed by, Defendant's telecommuting policies and regulations.

In the April 2, 2007 letter, you requested the following as remedy: 1) removal of the AWOL from your pay and leave records, and from your OPF; 2) back pay for nine hours for December 15, 2006; 3) removal of the Letter of Reprimand from your OPF; and 4) removal of all references to the AWOL and the Letter of Reprimand from all sources. ICE did not submit a response.

The filing of a civil action in U.S. District Court terminates the Commission's jurisdiction over a case. 29 C.F.R. § 1614.107(a)(3); LaCross v. United States Postal Serv., EEOC Appeal No. 05A10027 (April 4, 2001). Jurisdiction over an allegation of breach of an Agreement reached in settlement of a U.S. District Court case remains with the U.S. District Court. Gonzalez v. Department of the Treasury, EEOC Appeal No. 01966736 (Oct. 10, 1997); Olebara v. Department of the Treasury, EEOC Appeal No. 01A01882 (May 22, 2001). The Agreement noted that:

> In particular, and without limitation, this settlement shall include all possible actions for damages, back pay, front pay, and other equitable relief by [you] against Defendant, and claims for attorney's fees and costs incurred by [you] in connection with the administrative [EEO] process, the District Court litigation process and any other proceedings involving the claims raised, or which could have been raised, in this action.

Your allegation of breach surrounding the events of December 15, 2006, is not actionable in the administrative EEO process. However, your letters of April 2 and May 8, 2007, along with your email of May 16, 2007, alleged several new incidents wherein your supervisor made negative comments about the quality of your work, made telecommuting difficult for you, did not keep you informed, did not read your email, did not give you credit for extra time you put into your work while telecommuting, minimized and reduced your work, and delayed your vacation plans. You attributed these instances to your supervisor's attitude about the Agreement. To the extent that your letters of April 2 and May 8, 2007, along with your email of May 16, 2007, raise new allegations of discrimination, pursuit of a new complaint is the proper mechanism for seeking redress. Olebara, supra; 29 C.F.R. § 1614.504(c).

2

This letter constitutes the final determination by DHS on your allegation of breach. If you are dissatisfied with this decision, you may file an appeal according to the instructions at Enclosure (1). The appeal form is at Enclosure (2).

Sincerely,

Carmen H. Walker
Deputy Officer
Equal Employment Opportunity Programs
Office for Civil Rights and Civil Liberties


Encl:   (1) Notice of Appeal Rights
        (2) EEOC Form 573


cc:     Joan Slous, Esq.
        Deputy Chief
        Commercial and Administrative Law Division
        U.S. Immigration and Customs Enforcement
        425 I Street, N.W., Room 6100
        Washington, DC 20536

        Director, Equal Employment Opportunity
        U.S. Immigration and Customs Enforcement
        800 K Street, N.W., Suite 200
        Washington, DC 20536

JJS

# NOTICE OF APPEAL RIGHTS

You have the right to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate United States District Court.

All time periods are given in calendar days. If a time period expires on a Saturday, Sunday or Federal holiday, you may file on the next business day. If an attorney represents you, the time periods begin to run from the date that your attorney receives this decision.

## FILING AN APPEAL WITH EEOC

You have the right to appeal this decision to EEOC within 30 days of the day you receive this final decision. File your appeal by mail addressed to:

**Director, Office of Federal Operations**
**Equal Employment Opportunity Commission**
**P.O. Box 19848**
**Washington, DC 20036**

Or by personal delivery to:

**Director, Office of Federal Operations**
**Equal Employment Opportunity Commission**
**1801 L Street, NW**
**Washington, DC 20507**

Or by facsimile to (202) 663-7022.

At the same time you file an appeal with EEOC, you must also send a copy of your appeal to:

**Director, Equal Employment Opportunity**
**Immigration and Customs Enforcement**
**800 K Street, NW, Suite 200**
**Washington, DC 20536**

And to:

**Department of Homeland Security**
**Office for Civil Rights and Civil Liberties / MS0800**
**245 Murray Lane, SW**
**Bldg 410**
**Washington, DC 20528**

In your appeal to EEOC, you must state the date and method (for example, by certified mail or hand delivery) by which a copy of the appeal was sent to the Director, Equal Employment Opportunity. You should use the attached EEOC Form 573, Notice of Appeal/Petition, to file your appeal. EEOC will dismiss your appeal if you do not file it within the time limits.

The original of any statement or brief in support of your appeal must be filed with EEOC, with a copy to the Director, Equal Employment Opportunity, within 30 days of the date you file your appeal.

## FILING A CIVIL ACTION

You also have the right to file a civil action in an appropriate United States District Court within 90 days after you receive this final decision if you do not appeal to EEOC, or within 90 days after receipt of EEOC's final decision on appeal. You may also file a civil action after 180 days from the date of filing an appeal with EEOC if there has been no final decision by EEOC.

If your claim is based on age discrimination, the time limits noted above may not be applicable to you, especially if you are filing this civil action after giving EEOC not less than 30 days' notice of your intent to file such an action. Accordingly, you should consult an attorney if you desire further guidance regarding the timeliness of your case.

You must also comply with the following instructions:

(1) You must name Michael Chertoff, Secretary, Department of Homeland Security, as the defendant. Failure to provide his name and official title may result in dismissal of your case.

(2) If you decide to file a civil action and if you do not have, or cannot afford, the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action must be filed within 90 days of the date you receive the agency or EEOC final decision.

2

# NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### OFFICE OF FEDERAL OPERATIONS
P.O. Box 19848
Washington, DC 20036

**Complainant Information: (Please Print or Type)**

| | |
|---|---|
| Complainant's name (Last, First, M.I.) | |
| Home mailing address | |
| City, State, ZIP Code | |
| Daytime telephone number (with area code) | |
| Email Address | |

**Attorney/Representative Information: (if any):**

| | |
|---|---|
| Attorney name | |
| Firm name (if applicable) | |
| Address | |
| City, State, ZIP Code | |
| Telephone number | |
| Email Address | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination | |
| Identify the type of discrimination | |
| Location of the duty station or local facility in which the complaint arose | |
| Has a final action been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ___ Yes; Date Received _____ (Remember to attach a copy)<br>___ No<br>This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures? | ___ No<br>___ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Have you filed a lawsuit in connection with this complaint? | ___ No<br>___ Yes (Attach a copy of the civil action filed) |

**NOTICE:** Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC and with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative | |
| Date | |

**EEOC Form 573 REV 1/01**

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1.  **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, January 2001

2.  **AUTHORITY:** 42 U.S.C. § 2000e-16

3.  **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4.  **ROUTINE USES:** Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.

5.  **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

Send your appeal to:

## The Equal Employment Opportunity Commission
### Office of Federal Operations
### P.O. Box 19848
### Washington, D.C. 20036

---

## CERTIFICATE OF SERVICE

I hereby certify that the Final Order in the discrimination case of *MARCIA H. CLEVELAND V. MICHAEL CHERTOFF, SECRETARY, DEPARTMENT OF HOMELAND SECURITY*, HS 07-ICE-001220 sent via certified mail, return receipt requested to:

**COMPLAINANT:**

**MARCIA H. CLEVELAND**
**1602 DICKENS PLACE**
**UPPER MARLBORO, MD 20774**

**CERTIFIED MAIL #:**

**7005-1820-0000- 5833-2532**

**DATE: MAY 31, 2007**

*Mary Ann Shaw*

MARY ANN SHAW, EEO ASSISTANT
OFFICE FOR CIVIL RIGHTS & CIVIL LIBERTIES
DEPARTMENT OF HOMELAND SECURITY
WASHINGTON, DC 20528-5072

**Jones, Carolyn D**

| | |
|---|---|
| **From:** | Martindale, Paul A |
| **Sent:** | Monday, June 04, 2007 3:47 PM |
| **To:** | Stoddard, Marcia H. |
| **Subject:** | RE: Time Off Requested for Care of my Husband |

Marcia,

You have requested sick leave and LWOP under the provisions of the FMLA for Tuesday and Wednesday of this week. Thus far I have not received the medical documentation or a sick leave request. I need those things before I can approve your leave. I do not wish to record your time as AWOL on Tuesday and Wednesday, but if you do not provide those documents in advance and you do not report to work on Tuesday and Wednesday, your time may be charged as AWOL. In order to avoid this, please e-mail me or call me as soon as possible to clarify your work status for Tuesday and Wednesday this week.

Thanks,
--Paul

**Paul Martindale, PMP**
**Director, FPS/SEVP IT Systems Branch**
Office of the Chief Information Officer
Immigration and Customs Enforcement
US Department of Home and Security

801 "I" STREET NW - SUITE 620 | WASHINGTON, DC 20536 | office 202.732.7318 | cell 202.536.2054 | fax 202.732.7327 |

---

**From:** Stoddard, Marcia H.
**Sent:** Thursday, May 24, 2007 6:15 PM
**To:** Martindale, Paul A
**Subject:** RE: Time Off Requested for Care of my Husband

Paul, My husband has requested medical certification from his doctor for me, but I won't have it until sometime around mid week next week.  Marcia

> -----Original Message-----
> | | |
> |---|---|
> | **From:** | Martindale, Paul A |
> | **Sent:** | Thursday, May 24, 2007 6:06 PM |
> | **To:** | Stoddard, Marcia H. |
> | **Subject:** | RE: Time Off Requested for Care of my Husband |
>
> Marcia,
>
> According to the human resource office, you need to provide medical documentation to support your request to invoke the use of FMLA before the request can be considered. The medical documentation is justification for your entitlement for Leave Without Pay (LWOP) status under the provisions of the FMLA. An advance of sick leave is not an entitlement under FMLA. I have been advised not to advance sick leave. Please provide to me when you knew about your husband's surgery. According to the guidance you are supposed to notify me 30 days in advance of the need to invoke FMLA for foreseeable requests.
>
> Attached to this e-mail is a Department of Labor certification form that you should use to provide the medical documentation. While a requesting employee does not have to use the form, the alternative should have the same information covered.
>
> As an employee, the following is a list of your responsibilities:
> Provide notice to your employer of the need for leave.
> a) for leave that is foreseeable <http://www.dol.gov/elaws/esa/fmla/er1.asp> -- 30 days notice.
> b) for leave that is unforeseeable  <http://www.dol.gov/elaws/esa/fmla/er2.asp>-- as soon as practicable.
> c) comply with the employer's rules for requesting leave. See Regulations 29 CFR Part 825.302(d)
> <http://www.dol.gov/dol/allcfr/ESA/Title_29/Part_825/29CFR825.302.htm>.

1



EXHIBIT

tabbies

6

. Advise your employer if leave is to be taken intermittently <http://www.dol.gov/elaws/esa/fmla/er3.asp> or on a reduced leave schedule basis.

Provide medical certification <http://www.dol.gov/elaws/esa/fmla/er4.asp> for leave taken as a result of a serious health condition if required by your employer.

Comply with arrangements to make group health benefit <http://www.dol.gov/elaws/esa/fmla/er5.asp> co-payments. Periodically advise your employer of your intent to return to work <http://www.dol.gov/elaws/esa/fmla/er6.asp> at the conclusion of leave, if required by your employer.

Notify your employer of any change in the circumstances <http://www.dol.gov/elaws/esa/fmla/er7.asp> for which leave is being taken.

Provide your employer with a fitness for duty certification <http://www.dol.gov/elaws/esa/fmla/er8.asp> if required by your employer, when leave was taken for your own serious health condition.

Please provide the medical documentation as soon as you can so that it can be reviewed appropriately.

Thanks,
--Paul

<< File: FMLAform.pdf >>

**Paul Martindale, PMP**
**Director, FPS/SEVP IT Systems Branch**
Office of the Chief Information Officer
Immigration and Customs Enforcement
U.S. Department of Homeland Security

801 I STREET, N.W. SUITE 920 | WASHINGTON DC 20536 | office 202 732 7317 | cell 202 538 9104 | fax 202 732 7327 |

---

**From:** Stoddard, Marcia H.
**Sent:** Thursday, May 24, 2007 12:31 PM
**To:** Martindale, Paul A
**Subject:** FW: Time Off Requested for Care of my Husband
**Importance:** High

Paul,

I forgot to add that I am invoking my rights under the FMLA. The link below will provide you to the FMLA guidelines:

http://www.dol.gov/esa/whd/fmla/

I will provide you with medical documentation for this request sometime next week.

Thanks,
Marcia

-----Original Message-----
**From:**         Stoddard, Marcia H.
**Sent:**         Thursday, May 24, 2007 12:13 PM
**To:**           Martindale, Paul A
**Subject:**      Time Off Requested for Care of my Husband
**Importance:**   High

Paul,

Due to my husband's upcoming medical appointments for surgery, I am requesting approval of sick leave for June 5-6, 2007. If I don't have enough sick leave I would like to request advanced sick leave of 18 hours. I may not need all 18 hours, but the request is being made in case I don't have enough sick leave for June 5th and 6th.

Marcia

**From:**   Martindale, Paul A
**Sent:**   Monday, June 11, 2007 1:39 PM
**To:**     Stoddard, Marcia H.
**Subject:** RE: Telework Requirements

Marcia,

Thank you for the status report. Please remember that you are required to provide me with a weekly status report by the close of business each Wednesday or as soon as you return to the office if you are out on Wednesday. You also need to provide a status report for the previous week. I had requested a weekly status report from you last Friday (6/1/07) and I sent the message below to you. I am resending the message.

In accordance with the telework requirements in the message below, you are required to inform me in the morning or previous day via e-mail what you will be doing that day and each evening to inform me of your accomplishments for that day. Please provide a summary of the time you worked and the accomplishments for your telework on Friday and the previous week.

In addition, I am extending the requirements outlined above from just telework days to every day you are scheduled to work. Please email me each morning you are scheduled to work and inform me of what you plan to do that day. At the end of each day, please send me an email informing me of your accomplishments.

Also, in terms of your activities on Friday, I did not receive a call from you on Friday until about 4:45 PM requesting the final/latest SEVIS PMRs in order to review what was provided as performance measures. I will forward the current SEVIS PMR's so that you can review them. There are no changes that have been made on the performance measures from what you originally had. The significant changes were made only to the overview and risk page of the PMR template. I am looking to have you help create and develop appropriate performance measures as we discussed in our meeting on May 22nd. The performance measures need to be linked with and support the DHS and ICE Strategic Plan. I will provide copies of those documents to you.

Finally, please be advised that working on issues involving AWOL or other personnel matters, without my prior approval, while in a duty status does not constitute work and that I do not expect you to work on such matters, without prior approval, during duty hours in the future.

Thanks,
--Paul

Paul Martindale, PMP
Director, FPS/SEVP IT Systems Branch
Office of the Chief Information Officer
Immigration and Customs Enforcement
US Department of Homeland Security

801 "I" STREET, NW - SUITE 620 | WASHINGTON. DC 20536 | office 202.732.7318 | cell 202.536.9054 | fax 202.732.7327 |

---

**From:** Stoddard, Marcia H.
**Sent:** Monday, June 11, 2007 9:38 AM
**To:** Martindale, Paul A
**Cc:** McElhaney, William S
**Subject:** RE: Telework Requirements
**Importance:** High

Paul, It's Monday, 6-11-07. I received this email from work. This is my report for last week:

Monday - AWS

9/24/2007



Tuesday - placed on AWOL

Wednesday - placed on AWOL

Thursday - Working on researching why you placed me on AWOL and provided you with appropriate medical documentation and the court ordered subpoena requiring me to testiy in a Circuit Court

Friday - Called you to request the final/latest SEVIS PMRs in order to review what was provided as performance measures. I never received the information requested so I could not work on the templates. I read through the exhibit 300 for SEVIS to see what more other information I could retrieve to populate the PMRs for FPS.

I continued to contact OCIO management about being placed on AWOL and I have requested a transfer out of SDD because of how your continued harrassment and retaliation and vendictivness have and continues to affect and worsen my health issues and how sick I became the afternoon of Thursday, 6-7-07.

Marcia

-----Original Message-----
**From:** Martindale, Paul A
**Sent:** Monday, June 11, 2007 8:04 AM
**To:** Stoddard, Marcia H.
**Cc:** McElhaney, William S
**Subject:** FW: Telework Requirements

Marcia,

I wanted to verify that you received this message. Please let me know that you have read the message. I need for you to adhere to the requirements. I did not receive any notification as requested in this e-mail. In addition I did not receive a weekly status report for you last week.

Thanks,
--Paul

**Paul Martindale, PMP**
**Director, FPS/SEVP IT Systems Branch**
Office of the Chief Information Officer
Immigration and Customs Enforcement
US Department of Homeland Security

801 T STREET, NW - SUITE 620 | WASHINGTON, DC 20536 | office 202.732.7318 | cell 202.536.9054 | fax 202.732.7327 |

---

**From:** Martindale, Paul A
**Sent:** Friday, June 01, 2007 3:07 PM
**To:** Stoddard, Marcia H.
**Cc:** McElhaney, William S
**Subject:** Telework Requirements

Marcia,

When you started your telework agreement back in January, we discussed the need to provide me information on what you will work on and what you were able to accomplish on your telework day. When we met with Bill and Cristin on April 25th, we again discussed the need to provide measurable work products and activities for your telework day and to communicate your activities on your telework day with me. I did not receive a message from you this week on your work plan for today. In addition I have not been getting updates on your accomplishments for your telework day since we discussed this in April.

For all future telework days, please provide me the day before or earlier via e-mail what you plan to work on for your telework day. In addition, for today and for all future telework days please provide me a

summary of your work products, accomplishments, or activities by the end of each telework day via e-mail.

Thanks,
—Paul

**Paul Martindale, PMP**
**Director, FPS/SEVP IT Systems Branch**
Office of the Chief Information Officer
Immigration and Customs Enforcement
US Department of Homeland Security

801 "I" STREET, NW - SUITE 620 | WASHINGTON, DC 20536 | office 202.732.7318 | cell 202.536.905+ | fax 202.732 7327 |

**From:** Stoddard, Marcia H.
**Sent:** Tuesday, June 26, 2007 10:42 AM
**To:** Martindale, Paul A; McElhaney, William S
**Cc:** Novak, Steven M; Rice, Carol H; Sharp, Tai; Knowles, Michael A; Cooley, James E
**Subject:** RE: Status for 6-26-07

Paul and Bill,

I will not be back in the office until my doctor releases me to go back to work. I am requesting that I be placed on COP for the next 45 days or until I am feeling better to go back to work (hopefully in another office). My back has been injured and I will continue to have back injuries and panic attacks as long as Paul continues to threaten me in the manner in which he is doing.

Marcia

---

**From:** Stoddard, Marcia H.
**Sent:** Tuesday, June 26, 2007 10:35 AM
**To:** Martindale, Paul A
**Cc:** McElhaney, William S; Novak, Steven M; Rice, Carol H; Sharp, Tai; Knowles, Michael A; Cooley, James E
**Subject:** RE: Status for 6-26-07
**Importance:** High

Paul, in my phone message to you, I stated that I am requesting Continuation of Pay and Worker's Compensation. Since neither you nor Bill returned my phone call this morning, I called Carol Rice of ELR and Carol has emailed me the CA-1 form for Continuation of Pay and Worker's Compensation. I have just faxed the CA-1 form to Carol. I am now faxing the CA-1 form to you at 202-732-7327. Since I have sustained an on the job injury I am requesting COP not to exceed 45 days.

Let me know once you have received the fax or if there is another fax number where I should fax you the CA-1 form.

Marcia

---

**From:** Martindale, Paul A
**Sent:** Tuesday, June 26, 2007 10:07 AM
**To:** Stoddard, Marcia H.
**Subject:** Status for 6-26-07



EXHIBIT

8

Marcia,

I understand you fell ill yesterday and I received your voice mail this morning letting me know that you will not be in the office today. I also have been informed that you called Steve Novak and others letting us know that you will be out sick today. Your sick leave for today, June 26, 2007, is approved. I hope you are recovering and feeling better. Please let me know your plans for the rest of the week in terms of leave. If I do not hear from you, I will assume you will report for duty tomorrow at 9:00 am. If you are unable to report to work, please contact me as soon as practicable to request leave.

Thank you.
--Paul

**Paul Martindale, PMP**
Director, FPS/SEVP IT Systems Branch
Office of the Chief Information Officer
Immigration and Customs Enforcement
US Department of Homeland Security

801 'I' STREET, NW - SUITE 620 | WASHINGTON, DC 20536 | office 202 732 7318 | cell 202 536 9054 | fax 202 732 7327 |

9/24/2007



*Office of the Chief Information Officer*
**U.S. Department of Homeland Security**
801 I Street, NW
Washington, DC 20536

## U.S. Immigration and Customs Enforcement

DATE:     June 29, 2007

TO:       Marcia H. Stoddard
          IT Specialist
          c/o Tai Sharp, Union Representative

FROM:     Terry Johnston
          Office of the Chief Information Officer

SUBJECT:  Disciplinary Action

On June 4, 2007, FPS/SEVP IT Systems Branch Director Paul Martindale proposed to suspend you from your position as GS-2210-13, IT Specialist, for a total of five (5) work days for the following reason:

DISRUPTIVE AND UNPROFESSIONAL CONDUCT

The initial period in which to respond orally and/or in writing to the proposal was seven (7) calendar days which would have been Thursday, June 14, 2007. You requested and received an extension until June 25, 2007, a total of eighteen (18) days from the date you received the proposal. Late on June 25, your union representative requested an additional extension.  I agreed to a further extension until the morning of June 26 for any responses to be submitted. No attempt was made to schedule an oral response by the deadline, even though the Proposal clearly stated the deadline for the oral and written reply and I reiterated, in a letter dated June 12, that an extension was granted until June 25 for any oral and/or written reply. The only requests made by the union for an oral response were made after the June 25 deadline and were declined as untimely.

I have carefully reviewed the relevant information in this matter, including the documents provided to you with the proposal and your representative's written response. The response acknowledged the late staff meeting arrivals, as well as the conduct specified to have occurred on May 16. Therefore, I find the charge, Disruptive and Unprofessional Conduct, as stated in the proposal, sustained.

Many mitigating and extenuating circumstances were provided in the union's response, to include your contention that the previous official reprimand stemmed from a misunderstanding. The response also asserts that the admitted behavior on May 16 was not disruptive or unprofessional and was misconstrued as such by the proposing official.  It also notes submission of a request for reasonable accommodation. An obsolete INS discipline guide was cited rather



**EXHIBIT**

9

. . . .

than the January 2007 ICE Table of Penalties which, through bargaining, covers members of the bargaining unit.

The proposed penalty was well within the guidelines of the ICE Table of Penalties, in fact, it was actually one day less than the six to fourteen days specified for a second offense. I also considered the nature and seriousness of your misconduct. The misconduct has impacted the effectiveness of the branch and support to OCIO customers and has a negative impact on OCIO's confidence in your ability to perform your duties. I also considered that you have a reprimand on the record that must be considered a prior offense and an aggravating factor. In mitigation, I have considered your 32 years of government service and the fact that you have claimed a personality conflict and job tensions with your supervisor, as well as recently filing a reasonable accommodation request.

However, based on the information available to me and the totality of the circumstances, I assess that your conduct was intentional and that a lesser penalty would not deter similar behavior in the future. It is hoped that this suspension will impress upon you the seriousness with which your actions are held, that you will take corrective action, and that future discipline will not be necessary. I caution you that future misconduct may lead to further and more severe disciplinary action, up to and including removal from the Federal service. This penalty action is warranted and will promote the efficiency of the service.

Because you are not currently in a duty status, the imposition of the penalty will be held in abeyance. At the time of your return to duty, you will be notified of the dates of the suspension. Once the suspension has been imposed, your avenues for contesting this decision will be provided.

If you have any questions concerning this notice, your rights, or the procedures regarding this action, you may contact Ms. Carol Rice at (202) 514-9436.

If you need assistance in dealing with any personal matters, the Employee Assistance Program (EAP) is available to provide confidential counseling services. The EAP can be reached by calling 1-800-222-0364.



*Office of the Chief Information Officer*
U.S. Department of Homeland Security
801 I Street, NW
Washington, DC 20536

## U.S. Immigration and Customs Enforcement

August 6, 2007

| | |
|---|---|
| **MEMORANDUM FOR:** | Marcia Stoddard<br>IT Specialist |
| **FROM:** | Terry Johnston<br>Office of the Chief Information Officer |
| **SUBJECT:** | Imposition of Suspension |

On June 29, 2007, I decided to suspend you for five (5) calendar days but delayed the imposition of that penalty because you were not in a duty status. Today, you notified management of your return to duty and I am imposing the suspension from August 7 – August 11, 2007. You will return to duty status on Monday, August 13, 2007.

You have the right to appeal the decision in **one, and only one,** of the forums listed below:

1. You may contest the decision through your exclusive representative, AFGE, through the negotiated grievance procedure or to arbitration in accordance with Article 47 of the Agreement 2000; OR

2. If you believe this personnel action is based in whole, or in part, on discrimination because of race, color, religion, sex, age, national origin, or disability, you may file an Equal Employment Opportunity ("EEO") complaint. If you want to file an EEO complaint, you must contact the EEO Intake Office within forty-five (45) calendar days of the effective date of the suspension action. The ICE EEO Intake Office is located in Washington, DC phone: (202) 732-1230.

If you have any questions concerning this notice, your rights, or the procedures regarding this action, you may contact the Headquarters Immigration and Customs Enforcement Employee and Labor Relations Office, at 202-307-0891.



**EXHIBIT**

10

SUBJECT: [Imposition of Suspension]
Page 2

Please sign the acknowledgement of receipt below. Your signature does not indicate agreement with this reprimand, and by signing, you do not forfeit any of your rights cited above. Your signature only represents your receipt of this notice on the date signed.

/s/ Steven Novak    6 Aug 07
_____
Terry Johnston          Date

*for* Ms. Stoddard refused to sign the letter.

Acknowledgement of Receipt:

/s/
_____    _____
Marcia H. Stoddard                              Date

_____    8/6/07
Witness Signature                                  Date

*Office of the Chief Information Officer*
U.S. Department of Homeland Security
801 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

Date          August 9, 2007

To:           Marcia H. Stoddard
              IT Specialist

From:         William S. McElhaney
              Director, Systems Development Division

Subject:      Suspension Decision

On June 21, 2007, Paul Martindale, Director, FPS/SEVP IT Systems Branch proposed to suspend you from your position of IT Specialist, GS-2210-13 for fourteen (14) calendar days. The proposal was based on the following reasons:

**Reason 1: ABSENCE WITHOUT LEAVE (AWOL)**

**Reason 2: FAILURE TO FOLLOW SUPERVISORY INSTRUCTIONS**

**Reason 3: DELAY IN FOLLOWING SUPERVISORY INSTRUCTIONS**

**Reason 4: NEGLECT OF DUTY**

You and your representative were afforded an opportunity to respond orally and in writing. A written response was received on July 2, 2007. The union disputed that you were AWOL on June 5 and 6, 2007, claiming that court leave was unjustly denied. As for the second and third charges, the response asserted that instructions were either not specifically provided and or what was provided lacked clarity. The union further maintained that you complied with all work assignments in response to the fourth charge. The response also addressed the Douglas factors. There was, however, no documentation provided in support of the assertions made in the written response. Based on a review of the total record, including documents attached to the proposal, I find that the evidence supports all four reasons, including each specification under reasons 2 and 3. Therefore, all reasons are sustained.

In considering the penalty, I note that in February, 2007, you received an official reprimand and that on July 9, 2007 a decision was made to impose a five (5) day suspension for further misconduct. Thus, you have engaged in a consistent pattern of misconduct over a period of six months. I considered the Table of Penalties currently in use and a suspension of 14 calendar days is consistent with that Table as well as OCIO's practice in similar situations.


EXHIBIT
11

SUBJECT: [Suspension Decision]                                    Page: 2

The aggravating factors that I considered include the nature and seriousness of the offenses as well as the repetition of your misconduct. Each of the charges relate to recurrent interaction between you and your supervisor where you did not comply with simple and standard supervisory requests for assignment status reports and timely leave accounting. Personnel who do not accomplish their assignments are particularly debilitating in an understaffed organization like OCIO. Repeated failure to complete simple assignments, as well as failure to comply with standard leave approval protocol, does not instill confidence among colleagues or leadership. OCIO is in the midst of transformation and fundamental improvement. Your repeated violations, if not corrected, are debilitating to the fulfillment of the mission of OCIO and ICE. There were multiple clear communications from your supervisor, Mr. Martindale. Nevertheless you were not able to comply with simple time and attendance protocol and complete routine status reports. Based on all of this, I have little confidence in your ability to perform assigned duties and follow supervisory instructions. In addition, I question your potential for rehabilitation. especially after considering your written response, submitted by the union, where you do not acknowledge any wrongdoing and do not offer any evidence to support your assertions. I considered lesser penalties and determined that a lesser penalty would not correct your repeated misconduct or promote the efficiency of the service.


In its request for mitigation, the union asserts that you have a physical disability. Although a reasonable accommodation request based upon disability was made and a workers' compensation claim filed, there is no documentation that either has been granted by the appropriate authority. The union also asserts that you have unusual job tensions with your supervisor. I acknowledge your years of service and possible tensions outside of the job as the only documented mitigating factors. When those factors are weighed against the aggravating factors, I find the suggestion that I should mitigate the proposal to counseling or an official reprimand completely unpersuasive.


Therefore, I have decided that a suspension from duty of fourteen (14) days is appropriate. This suspension will be served from August 14 through August 27, 2007. You will be expected to return to duty on August 28, 2007. Once the suspension is **imposed**, you have the right to appeal the decision in **one, and only one,** of the forums listed below:


1. You may contest the decision through your exclusive representative, AFGE, through the negotiated grievance procedure or to arbitration in accordance with Article 47 of the Agreement 2000; OR

2. If you believe this personnel action is based in whole, or in part, on discrimination because of race, color, religion, sex, age, national origin, or disability, you may file an Equal Employment Opportunity ("EEO") complaint. If you want to file an EEO complaint, you must contact the EEO Intake Office within forty-five (45) calendar days of the effective date of the suspension action. The ICE EEO Intake Office is located in Washington, DC  phone: (202) 732-1230.

SUBJECT: [Suspension Decision]                                    Page: 3

If you have any questions concerning this notice, your rights, or the procedures regarding this action, you may contact the Headquarters Immigration and Customs Enforcement Employee and Labor Relations Office, at 202-307-0891.

Please sign the acknowledgement of receipt below. Your signature does not indicate agreement with this reprimand, and by signing, you do not forfeit any of your rights cited above. Your signature only represents your receipt of this notice on the date signed.

/s/ _C. L. Holen_                              _8/9/07_
**William S. McElhaney**                        **Date**

Acknowledgement of Receipt:

/s/ _____                          _____

**Marcia H. Stoddard**                          **Date**

_____                              _____
**Witness Signature**                           **Date**

*Office of the Chief Information Officer*
U.S. Department of Homeland Security
801 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

Date:       August 22, 2007

To:         Marcia H. Stoddard
            IT Specialist

From:       Paul Martindale, PMP
            Director, FPS/SEVP IT Systems Branch

Subject:    Proposed Removal

In accordance with the provisions of 5 U. S. Code, Chapter 75, this is advance notice that I propose to remove you from your position of IT Specialist, GS-2210-13 and Federal Service. This proposal is being made for just and sufficient cause and to promote the efficiency of the service. This action, if found warranted, will take place no earlier than thirty (30) calendar days from the date you receive this notice. This proposal is based on the following:

**Reason 1: ABSENCE WITHOUT LEAVE (AWOL) – TARDY ARRIVAL FOR DUTY**

**Specification.** On Thursday, June 21, 2007, you did not report for duty by your starting time of 9:00 am. You did not arrive at work until 11:25 am. You did not have approval or request approval of a supervisor to come in late.

**Reason 2: FAILURE TO FOLLOW LEAVE PROCEDURE**

**Specification.** On Thursday, June 21, 2007, you did not follow proper leave procedures. You did not request leave in advance and did not call your supervisor to request leave for a medical or other emergency.

**Reason 3:   MISREPRESENTATION ON SIGN IN – SIGN OUT SHEET**

**Specification.** On Thursday, June 21, 2007, you reported for duty at 11:25 am and did not accurately record your actual arrival time at the office on the sign in – sign out sheet.

**Reason 4:  FAILURE TO FOLLOW SUPERVISORY INSTRUCTIONS**

**Specification 1.** Your telework agreement requires that you notify your supervisor of measurable work products planned and activities accomplished for each day spent working from home. This requirement was reiterated in a meeting on April 25, 2007, again in a meeting on May 22, 2007, and also in my letter provided to you on June 21, 2007. Despite the reiteration, you did not follow these



**EXHIBIT**

12

SUBJECT: Proposed Removal
Page 2

instructions for the telework day on Friday, June 22. You did not provide a report of planned activities prior to the start of the telework period.

**Specification 2.** You were directed to provide a weekly report of the status on assigned projects to your supervisor each Wednesday (or the next work day, if off on Wednesday). You did not follow the instruction to provide a timely weekly status report on Wednesday, June 20.

**Specification 3.** Due to your routine lack of demonstrated accomplishment of assigned work, on June 11, 2007, I directed you to provide a daily report on work planned and work accomplished. You were reminded of the requirement on June 13. You did not follow these instructions on June 20.

**Specification 4.** You did not follow the instructions to provide a daily report on work planned and work accomplished on June 21.

**Specification 5.** You did not follow the instructions to provide a daily report on work planned and work accomplished on June 25.

**Specification 6.** On June 25, 2007, you contacted contractor personnel and asked them to perform compensable tasks without supervisory approval, contrary to supervisory instructions of May 17 which you acknowledged receiving in an email on June 21.

**Reason 5: NEGLECT OF DUTY**

**Specification 1.** Your work assignments were discussed with you on May 22, 2007. However, you accomplished little in the next three weeks. On June 11, 2007, you were sent a summary of your assignments and directed to provide dates, additional deliverables or outcomes by June 15, 2007. You did not comply with that directive during the week of June 18 – 22, 2007.

**Specification 2.** You were assigned to work on the Program Management Review (PMR) for the Student Exchange Visitors Program (SEVP) and the Federal Protective Service (FPS) program. This assignment was discussed in detail at a meeting with you on May 22, 2007. Instead of performing the work on the PMRs yourself, you attempted on several occasions to have a co-worker (Eric Simpson), contractors (SAIC, SYTEL/EDS), and customers (Denise Mackie-Smith and James Farr, SEVP) perform the work you were assigned to complete on the PMR's. You requested and were provided detailed guidance from me on expectations and requirements for risk management and performance measures. Your position as an IT Specialist requires that you perform complete and timely analysis, and your failure to provide meaningful results and input for the PMR's was negligent, as you had ample time to perform the requested data gathering and creation of the PMR's, and you failed to undertake this task with the care and diligence required by your position. The input provided for risk and performance measures were so generic that they could apply to almost any IT system or set of systems.

SUBJECT: Proposed Removal
Page 3

**Specification 3.** On the morning of June 21, 2007, you were requested to review and provide comments, by the close of business, regarding the SEVIS OMB Exhibit 300. However, the comments that you provided were so generic and basic as to be of no use to the branch. Your position as an IT Specialist requires that you perform complete and timely analysis, and your failure to provide meaningful comments regarding the Exhibit 300 was negligent, as you had ample time to perform the requested review and provide comments, and you failed to undertake this task with the care and diligence required by your position.

**Specification 4.** Despite being clearly told of multiple assignments on May 22, 2007, and not having completed them by June 22, 2007, your June 22, 2007 10:19 pm email does not document the completion of projects that would fill an entire day of work.

In determining the proposed penalty, I considered that on February 1, 2007 you received an official reprimand for absence without leave and that on June 29, 2007 you received a five day suspension for disruptive and unprofessional conduct. On August 9 2007, you received a fourteen day suspension based on further misconduct. Your continued misconduct has impacted the effectiveness of the FPS/SEVP IT Systems Branch in accomplishment of day-to-day work involving support to our customers. I considered the penalty table currently in use and determined that a lesser penalty would not promote the efficiency of the service. This is clear by the fact that you continue to engage in the same or similar misconduct despite being on clear notice that it is unacceptable.

I also consider your misrepresentation of your time on the sign-in/sign-out sheet on June 21, 2007, to be very serious. In addition, in proposing your removal I considered your performance and the fact that your conduct has negatively impacted your performance. I no longer have confidence in your ability to perform the duties of your position, and question your honesty and ability to follow instructions. Finally, given that you continue to engage in misconduct and that previous disciplinary actions seem to have not altered or changed your conduct, I do not believe there is potential for your rehabilitation.

This notice is a proposal and not a decision. You have the right to reply to this proposal orally and/or in writing and furnish any evidence, including medical documentation, in support of your reply within ten (10) calendar days after the date you receive this proposal. Consideration may be given to extending this time limit if you submit a written request stating your reasons for needing more time. Your written reply and any affidavits or other supporting documents should be sent to the Deciding Official, Mr. William S. McElhaney, Director, Systems Development Division, Office of Chief Information Officer, 801 I Street, NW, Suite 620, Washington, DC, 20536. You may make arrangements for an oral reply by contacting Mr. McElhaney at (202) 732-7100.

You have the right to be represented by an attorney or other representative of your choice in preparing and presenting any reply. If you choose to have a representative, you must provide your

SUBJECT: Proposed Removal
Page 4

representative's name in writing to Ms. Carol Rice, U.S. Immigration and Customs Enforcement, Headquarters Office of Human Resources, Employee and Labor Relations. Room 2214, 425 1 Street, NW, Washington. DC 20536, identifying that person as your representative. Your representative may be disallowed if the representation creates a conflict between the interest or position of the representative and that of the OCIO; or, where the representative is an OCIO employee whose release from his or her official position would give rise to unreasonable costs or whose work assignments preclude his or her release.

You will be placed on administrative leave, effective at the end of the fourteen (14) day suspension currently being served. You will remain on administrative leave until further notice. You may review the material relied upon to support the reason for the proposed suspension, furnish affidavits and other documentary evidence, and prepare and present your written and/or oral reply. The material relied upon that supports this proposal is attached. .

If you have any questions concerning this notice, your rights, or the procedures regarding this action, you may contact the Headquarters Immigration and Customs Enforcement Employee and Labor Relations Office, Ms. Carol Rice, 202- 616-2342 (carol.h.rice@dhs.gov).

If you need assistance in dealing with any personal matters, the Employee Assistance Program (EAP) is available to provide confidential counseling services. EAP can be reached by calling 1-800-222-0364.

Please sign the acknowledgement of receipt below. Your signature does not indicate agreement with this proposal and by signing, you do not forfeit any of your rights cited above. Your signature only represents your receipt of this notice on the date signed.

_____                    8/22/07
Paul Martindale                                    Date


Acknowledgement of Receipt:


_____                    8/28/07
Marcia H. Stoddard                                 Date
(Ms. Stoddard refused to sign).

_____                    8/28/07
Witness' Signature